IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN E. ARNOLD,<br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br>Defendant. | Case No. 19–CV–00343–JPG–GCS |

### **MEMORANDUM & ORDER**

**I.    INTRODUCTION**

This is an appeal of the Social Security Administration's denial of Plaintiff Susan E. Arnold's application for disability insurance and Social Security Income benefits. Before the Court is Plaintiff's Brief. (Pl.'s Brief, ECF No. 20). The Commissioner of Social Security responded. (Comm'r's Brief, ECF No. 24). For the reasons below, the Court **REVERSES** the Social Security Administration's decision.

**II.   PROCEDURAL & FACTUAL HISTORY**

In 2012, Plaintiff began experiencing abdominal pain, weight loss, breast mass, fatigue, and abnormal menstruation. (Tr. 691, ECF No. 16). A colonoscopy later revealed a rectal mass: it was cancer. (Id. at 340). But after surgery and nearly a year of chemotherapy, Plaintiff seemed to have improved. (Id. at 759). That said, she began experiencing debilitating diarrhea, which persists today. (Id. at 1694). She takes Imodium—an over-the-counter medication— nearly every day, but it does not always work; she has 4–5 "accidents" per week that require her to go home, bathe, and change clothes. (Id. at 1697). She experiences diarrhea so often that she is afraid to leave her home altogether. (Id. at 1706).

Plaintiff applied for disability and Social Security Income benefits, (id. at 1665), and the Social Security Administration denied Plaintiff's application in 2014, (id. at 1731). This Court remanded because the administrative law judge ("ALJ") "merely summarized the medical records and reached a conclusion, without building a logical bridge between the two." (Id. at 1746).

In 2018, another ALJ reconsidered Plaintiff's application and conducted a new hearing. (Id. at 1657). The ALJ applied the five-step analysis used to determine whether an applicant is disabled, see 20 C.F.R. § 404.1520(a), and concluded that Plaintiff is not disabled, (Tr. 1658). At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date in 2012. (Id. at 1660). At Step 2, the ALJ evaluated Plaintiff's conditions and concluded that she is suffering from the following severe impairments: "history of colorectal cancer, degenerative changes of the lumbar spine, and chronic obstructive pulmonary disease." (Id.). At Step 3, however, the ALJ determined that these impairments do not meet the statutory listing for presumptive disability. (Id.).

In evaluating Plaintiff's residual functional capacity at Step 4, the ALJ determined that Plaintiff can still perform light work. (Id. at 1661). Although Plaintiff's impairments could reasonably cause the symptoms she complains about (*i.e.*, severe gastrointestinal issues), the ALJ found that Plaintiff's subjective reports about the intensity, persistence, and limiting effects of those symptoms are "inconsistent with the medical evidence." (Id. at 1662–63). The ALJ noted that "[Plaintiff] alleges continuing problems with diarrhea and fecal incontinence, but testified that she only takes nonprescription anti-diarrheal medication 'every day or every other day' and does not use diapers or pads. There is no indication that she has ever treated with a gastroenterologist for her symptoms." (Id.).

The ALJ's Step-4 analysis also included a weighing of expert opinions. Dr. Turner, Plaintiff's treating physician of at least six years, submitted two opinions—one in 2014 for the initial hearing, and another in 2018 for the rehearing. His 2014 opinion made these assertions:

- Plaintiff can only sit or stand for 30 minutes and can walk 100 feet without taking a break. (Id. at 1615–16).

- Plaintiff can only sit or stand for 30 minutes and walk 50 feet total in an entire workday. (Id. at 1616).

- Plaintiff experiences nerve damage. (Id. at 1619).

And his 2018 opinion asserted the following:

- Plaintiff is "[i]ncapable of even 'low stress' jobs." (Id. at 2590).

- Plaintiff experiences "diarrhea daily . . . due to colon cancer," among other things. (Id. at 2589).

- Plaintiff can only sit or stand for less than two hours total in an entire workday. (Id. at 2590–91).

- Plaintiff could sit for 30 minutes without taking a break. (Id. at 2591).

- Plaintiff must take a break to walk every five minutes. (Id.).

- Plaintiff could walk a quarter-block before needing a break. (Id. at 2590).

- Plaintiff needs to take a break every 5–7 steps. (Id.).

The ALJ determined that both of Dr. Turner's opinions were internally inconsistent and not backed by objective medical evidence. (Id. at 1663–64). The ALJ therefore gave them "little credit." (Id.).

The ALJ also considered the opinion of Dr. Chapa, the consultative examiner. Dr. Chapa examined Plaintiff in 2017 and reported that "[s]he cannot stand for long periods of time" and "has diarrhea all the time." (Id. at 2233). Dr. Chapa also reviewed Plaintiff's medical records and found

her subjective reports to be "reliable." (Id.). After reviewing the opinion, the ALJ determined that it was "consistent with the record as a whole" and gave it "significant credit." (Id. at 1663).

Finally, the ALJ gave "significant credit" to the opinion of an impartial medical expert, who concluded that Plaintiff "could perform light work with occasional ramps and stairs, no ladders, ropes, or scaffolds, occasional balancing and stooping, and no kneeling, crouching or crawling." (Id. at 1663). The ALJ assessed Plaintiff's residual functional capacity consistent with that opinion. (Id. at 1660).

A vocational expert then testified that an individual with Plaintiff's residual functional capacity can still work, so long as she would not be "off task" for more than 10-percent of the workday. (Id. at 1712). Being off task for 10-percent of the workday amounts to the following: a 10–15-minute break in the morning and another in the afternoon; a 30–60-minute lunch break; and two five-minute unscheduled bathroom breaks throughout the day. (Id. at 1713). An individual that takes another 10–15-minute break every day is "precluded from work." (Id. at 1714).

The ALJ ultimately determined that Plaintiff is not disabled and "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 1665). Plaintiff's application for disability and Social Security Income benefits was therefore denied. (Id. at 1666).

Plaintiff appealed to this Court pursuant to 20 C.F.R. § 404.984. (Pl.'s Brief 2). There are two issues presented: (1) whether the ALJ gave insufficient weight to Dr. Turner's opinions; and (2) whether the ALJ improperly discredited Plaintiff's subjective symptoms. (Id. at 3).

### III.  LAW & ANALYSIS

The ALJ's decision to give little credit to Dr. Turner's opinions was supported by substantial evidence. The opinions contained several inconsistencies and lacked evidentiary

support. That said, the ALJ improperly discredited Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms. This was not harmless error. And since the record is so complete that remand would be pointless, the Court reverses.

### A. Standard of Review

In reviewing the Social Security Administration's benefits decisions, the Court treats its findings as conclusive "so long as they are supported by 'substantial evidence.' " Beistek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). A decision is supported by substantial evidence if it contains sufficient evidence to support its factual determinations. See Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Put differently, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This is a very deferential standard of review. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008). "It is the responsibility of the ALJ, not the reviewing court, to resolve conflicting evidence and to make credibility determinations." Brewer v. Chater, 103 F.3d 1384 (7th Cir. 1997). The Court only must determine "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009) (quoting Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008)).

### B. Plaintiff's Treating Physician

ALJs must "give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.' " Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006) (quoting 20 C.F.R. § 404.1527(c)(2)). They must therefore provide "good reasons" before discounting a treating physician's opinion. Martinez v. Astrue, 630 F.3d 693, 698 (7th Cir.

2011). A treating physician's opinion may also carry less weight "if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'" Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004) (quoting Clifford v. Apfel, 227 F.3d 863, 870) (7th Cir. 2000)) (internal citations omitted).

The Court must "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" Stepp v. Colvin, 795 F.3d 711, 718 (7th Cir. 2015) (quoting Luster v. Astrue, 358 Fed. App'x 738, 740 (7th Cir. 2010)). An ALJ's determination is only patently wrong and deserving of reversal when it "lacks *any* explanation or support . . . ." Elder, 529 F.3d at 413–14 (emphasis added).

ALJs consider these factors when determining the weight of a treating physician's opinion: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and supportability of the physician's opinion. Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). But the ALJ need not explicitly weigh each factor in discussing a treating physician's opinion; it is enough that his decision makes clear that he was aware of and considered many of them. See Schreiber v. Colvin, 519 F. App'x 951, 959–60 (7th Cir. 2013).

Here, the ALJ did not give Dr. Turner's 2018 opinion controlling weight because it was "inconsistent with the objective medical evidence, particularly his physical exam findings . . . ." (Tr. at 1663–64). The ALJ also questioned whether Dr. Turner relied on Plaintiff's "subjective report of symptoms and functional limitations rather than objective medical evidence." (Id.). The ALJ noted that Dr. Turner's 2014 opinion suffered from similar deficiencies, providing "no objective medical evidence in support of his opinion." (Id.).

Plaintiff contends that "nearly every factor . . . necessitates giving great weight to Dr. Turner's opinion." (Pl.'s Brief at 15). The Court disagrees. The only factor that Plaintiff addresses is the length of the treatment relationship—Dr. Turner has treated Plaintiff since at least 2012. (Id.). But she neglects mentioning that Dr. Turner specializes in family medicine and that he failed to describe the types of tests performed. Further, Dr. Turner's opinion includes no physical exam findings, x-ray findings, or laboratory test results, thus reducing the supportability of his opinion. What is more, both opinions are internally inconsistent. In the 2014 opinion, Dr. Turner asserted that Plaintiff can walk 100 feet without taking a break, yet she can only walk 50 feet during the workday. (Tr. 1615–16). Similarly, his 2018 opinion stated that Plaintiff can sit for 30 minutes without needing a break, yet she needs to walk every five minutes. (Id. at 2590–91). He also claimed that Plaintiff cannot sit *or* stand for two hours *total in an entire workday*. (Id.). Even though Dr. Turner has been Plaintiff's treating physician for at least six years, the opinions lacked evidentiary support; and their inconsistencies represent a carelessness that bolster the ALJ's decision to give them little weight. In short, the ALJ minimally articulated good reasons for discrediting Dr. Turner's opinions.

### C.  Plaintiff's Subjective Symptoms

ALJs examine the entire case record when considering the intensity, persistence, and limiting effects of an individual's symptoms. SSR 16–3P, 2016 WL 1119029, at *4 (Mar. 16, 2016). This includes the following evidence: (1) the objective medical evidence; (2) the individual's statements; (3) statements and other information provided by medical sources and other persons; and (4) any other relevant information in the individual's case record. Id. Not all these types of evidence are relevant in every case; unless it supports a finding of disability, an ALJ cannot evaluate the intensity of an individual's symptoms solely on objective medical evidence.

<u>Id.</u> Objective medical evidence is medical evidence that provides signs or laboratory findings established by "acceptable clinical diagnostic techniques." <u>Id.</u> at *3. But "[s]ymptoms cannot always be measured objectively through clinical or laboratory techniques," <u>id.</u> at *4, and an ALJ cannot disregard subjective complaints just because a determinable basis for symptoms of that intensity do not stand out in the medical record, <u>see</u> <u>Moss v. Astrue</u>, 555 F.3d 556, 561 (7th Cir. 2009). Even so, the Court will only overturn an ALJ's adverse credibility finding if it is patently wrong. <u>Gerstner v. Berryhill</u>, 879 F.3d 257, 261 (7th Cir. 2018).

  Here, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. at 1662–63). The ALJ acknowledged Plaintiff's testimony that she has experienced gastrointestinal issues since 2013, noting that Plaintiff has accidents 4–5 times per week. (<u>Id.</u>). Despite these "continuing problems with diarrhea and fecal incontinence," however, the ALJ stated that "[Plaintiff] testified that she only takes nonprescription anti-diarrheal medication 'every day or every other day' and does not use diapers or pads. There is no indication that she has ever treated with a gastroenterologist for her symptoms." (<u>Id.</u>). The ALJ therefore found that "[t]he overall record is not consistent with disabling conditions or related symptoms." (<u>Id.</u>).

  Plaintiff argues that the ALJ erred by assuming that the lack of prescription medication to treat her diarrhea suggested exaggeration. (Pl.'s Brief at 16). Plaintiff points to two record documents to support her claim that Imodium—an over-the-counter medicine—"is generally recommended for long-term or chronic diarrhea." (<u>Id.</u>). Neither of those documents, however, support that proposition. The first is a 2013 patient information form that states that Plaintiff takes Imodium "as directed," (Tr. 961); and the second is a 2014 list of Plaintiff's medications that states

that she takes Imodium "as needed for diarrhea," (id. at 314). While it may be true that Imodium is a better long-term treatment for chronic diarrhea than prescription medication, that assertion lacks support in the record. Indeed, Plaintiff resorts to citing an Internet source to bolster her claim—a source that was not before the ALJ when she rendered the decision. After the ALJ examined Plaintiff during the hearing, Plaintiff's counsel had a chance to place that information on the record and clarify why she was not prescribed anti-diarrheal medication. He failed to do so. And the Court cannot consider other evidence provided after the denial of a claim. See 42 U.S.C. § 405(g). Although the Court "may at any time order additional evidence to be taken before the Commissioner," it may only do so "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record . . . ." Id. Plaintiff's Imodium evidence is not new, nor is there good cause to excuse Plaintiff's failure to present the evidence to the ALJ.

That said, the ALJ erred by failing to base her decision on the entire administrative record. The record is well-stocked with reports of severe gastrointestinal issues that bolster Plaintiff's subjective complaints. For example, Plaintiff complained to Dr. Chapa that "[s]he cannot stand for long periods of time" and "has diarrhea all the time." (Tr. 2233). Dr. Chapa reviewed Plaintiff's medical records and found her subjective reports to be "reliable." (Id.). And the ALJ gave "significant credit" to Dr. Chapa's opinion, finding it "consistent with the record as a whole." (Id. at 1663). Yet the ALJ determined that Plaintiff's complaints conflicted with the medical evidence, noting that Plaintiff was taking nonprescription medication, not using diapers, and had not seen a gastroenterologist. (Id. at 1662–63). But none of those facts constitute objective medical evidence, as defined by the Social Security Administration. See SSR 16–3P at *3. (ALJs also may not evaluate the limiting effects of an individual's symptoms by looking at medical evidence alone.

(Id. at *4).). Rather, the ALJ imposed her own subjective skepticism regarding the intensity of Plaintiff's complaints and improperly framed them in the guise of objective medical evidence.

Moreover, Plaintiff's complaints of gastrointestinal issues track her daily activities. She is afraid to leave her home because she might have an accident. (Tr. 1706). When she does go out, she reports having 4–5 accidents in a week, requiring her to go home, bathe, and change clothes. (Id. at 1697). The ALJ did not consider the fact that Plaintiff has structured her life to avoid displaying her symptoms in public. The ALJ also failed to explain what objective medical evidence conflicted with these symptoms—she simply disagreed with Plaintiff's chosen course of treatment. But the Court can hardly fathom an individual with Plaintiff's symptoms staying on task for 90-percent of the workday and sustaining employment. All in all, the ALJ was patently wrong in determining that the overall record does not reflect disabling conditions or related symptoms. Since the record is so complete that remand would be pointless, the Court reverses.

## IV.     CONCLUSION

The Court **REVERSES** the Social Security Administration's denial of Plaintiff Susan E. Arnold's application for disability insurance and Social Security Income benefits.

**IT IS SO ORDERED.**

**Dated: Thursday, April 16, 2020**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
